IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER CROOM, #R23966, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 17-cv-00631-NJR ) |
| NURSE TRIPP, JOHN DOE (Sergeant), JOHN DOE (Nurse/Medical Provider), JACQUELINE LASHBROOK, MICHAEL MOLDENHAUER, and DIA RODELY, | ) ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Christopher Croom, an inmate who is currently incarcerated in Menard Correctional Center ("Menard"), filed a civil rights action *pro se* pursuant to 42 U.S.C. § 1983 for numerous deprivations of his constitutional rights at Menard. *See Croom v. Lashbrook*, No. 17-cv-612-DRH (S.D. Ill.) ("original action"). Pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Court severed the claims in the original action into three new cases. (Doc. 1). This case addresses six claims ("Counts 2-7") regarding Plaintiff's health and safety at Menard.[1]

Before the Court screened Counts 2-7 pursuant to 28 U.S.C. § 1915A, Plaintiff filed a Motion for Leave to Amend Complaint, which was granted. (Doc. 11). In the First Amended Complaint, Plaintiff names additional defendants in connection with the six severed claims in this case. (Doc. 12). In addition to Nurse Tripp, Sergeant John Doe, and Nurse/Medical Provider

---

[1] Plaintiff did not seek leave to proceed in this matter *in forma pauperis*, and he was ordered to pay the full $400.00 filing fee. (Doc. 1, p. 9). Plaintiff satisfied this obligation on August 1, 2017.

1

John Doe, he names Warden Jacqueline Lashbrook, Physician's Assistant Michael Moldenhauer, and Counselor Dia Rodely. *Id*. He seeks declaratory judgment, monetary damages, and a preliminary injunction requiring prison officials to serve him a soy-free diet. (Doc. 12, pp. 27-28, 30-35).

The First Amended Complaint is now subject to preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>>
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). As explained below, the First Amended Complaint survives screening under this standard, although certain claims do not.

## First Amended Complaint

This case focuses on two groups of claims. The first arises from the prison's soy diet (Counts 2-3). The second arises from Plaintiff's fall from the top bunk on March 3, 2017 (Counts 4-7). (Doc. 12). A summary of the allegations offered in support of each group of claims is set forth below.

1.  **Soy Diet**

Plaintiff claims that Menard's diet has endangered his health. (Doc. 12, p. 8). Instead of "real meat," inmates at Menard are routinely fed soy products six or seven days each week. *Id*. Plaintiff blames the diet for causing severe stomach pain, gas, constipation, rectal bleeding, and "no telling what other internal damage." *Id*. P.A. Moldenhauer took x-rays of Plaintiff's stomach, after instructing him to drink two cups of Milk of Magnesia. *Id*. The x-rays showed constipation and gas. *Id*.

Plaintiff requested a blood test for hypothyroidism, but Nurse Tripp informed him that the prison does not "do blood tests." (Doc. 12, p. 8). P.A. Moldenhauer gave him stool softeners instead. *Id.* Plaintiff alleges that the stool softeners have done nothing to reduce his stomach pain, although he does not indicate whether he put either medical provider on notice of this. *Id*.

Plaintiff has repeatedly requested a soy-free diet. (Doc. 12, p. 8). But Nurse Tripp denied his request without any explanation, and P.A. Moldenhauer explained that "[t]he Administration" instructed him to deny all inmate requests for dietary changes. (Doc. 12, pp. 8-9). Plaintiff alleges that Warden Lashbrook is the only person with the authority to issue such directives. (Doc. 12, p. 9). Plaintiff has submitted grievances to complain about the diet to the counselor and grievance officer, but both individuals ignored or discarded his grievances. (Doc. 12, pp. 9-10).

2. **Fall from Bunk**

Plaintiff also claims that several defendants exhibited deliberate indifference to his health and safety, after he fell from his top bunk on March 3, 2017. (Doc. 12, pp. 10-12). Plaintiff is housed in a cell that was originally built for a single inmate. (Doc. 12, pp. 10-11). To accommodate a second inmate, two beds were welded together and chained to the wall. *Id*. The beds have no ladders. *Id*. Inmates must climb and jump onto the top bunk. *Id*.

While attempting to get onto on March 3, 2017, Plaintiff fell. (Doc. 12, p. 10). He "split [his] elbow on the lower bunk" during the fall. *Id*. Plaintiff landed on the back of his head and upper back. *Id*. He was "incapacitated" and unable to move. (Doc. 12, p. 11).

The cell has no emergency call button. (Doc. 12, p. 11). Plaintiff's cellmate called for help. *Id*. After fifteen minutes, an officer[2] eventually appeared and contacted a sergeant,[3] who informed "Medical"[4] about the situation. *Id*. The sergeant later appeared at Plaintiff's cell and informed him that "Medical" refused to come examine him because there was no emergency. *Id*. Medical instead agreed to see him during sick call. *Id*.

Plaintiff met with Nurse Tripp the same morning. (Doc. 12, p. 11). At the time, he was barely able to walk. *Id*. When he told her what happened, Nurse Tripp said she knew nothing about the fall and was only taking his blood pressure. (Doc. 12, pp. 11-12). Plaintiff insisted that his neck and back were injured. (Doc. 12, p. 12). After looking at both areas, she said there was

---

[2] The officer is not named as a defendant in this action. Therefore, all claims against this individual are considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").
[3] This individual appears to be the defendant who Plaintiff identified as Sergeant John Doe in the First Amended Complaint.
[4] This individual appears to be the defendant who is identified as Nurse/Medical Provider John Doe in the First Amended Complaint.

4

nothing she could do to help him. *Id*. Sergeant Young[5] then asked Plaintiff if he was injured in a fall or during a fight. *Id*. Despite the fact that Plaintiff was in "obvious pain," Nurse Tripp refused to put him on the sick call list or schedule an appointment with a doctor. *Id*.

For the next three weeks, Plaintiff filed numerous sick call slips. (Doc. 12, p. 12). When he was finally called to the health care unit, Nurse Tripp met with him once again. *Id*. During the appointment, the nurse made it clear that she had received, reviewed, and ignored all of his requests for medical attention during the preceding three weeks. *Id*. Nevertheless, she agreed to put him on the list to see P.A. Moldenhauer. *Id*.

When Plaintiff finally met with P.A. Moldenhauer, he ordered an x-ray. (Doc. 12, p. 12). The results were "unremarkable." *Id*. Plaintiff was given no prescription for pain medication. (Doc. 12, p. 13). Instead, he has used ibuprofen to treat the pain and stiffness in his back and neck since his fall. *Id*.

## Discussion

This case addresses the following six claims, which the Court has re-characterized based on the new allegations and parties named in the First Amended Complaint, as follows:

**Count 2 –** Plaintiff's health was endangered in violation of the Eighth Amendment by the excessive amount of soy in the prison's diet.

**Count 3 -** Tripp, Moldenhauer, Rodely, and/or Lashbrook were deliberately indifferent to Plaintiff's severe stomach pain, gas, constipation, and rectal bleeding.

**Count 4 -** Tripp was deliberately indifferent to Plaintiff's injuries after he fell off his bunk on March 3, 2017, when she refused to examine him, ignored his call passes, and refused to prescribe him medication for his pain and stiffness.

**Count 5 -** Nurse/Medical Provider Doe was deliberately indifferent to Plaintiff's serious medical needs when he refused to examine Plaintiff and determine whether he was injured after he fell off of his bunk on March 3, 2017.

---

[5] Sergeant Young is not a defendant in this action, and all claims against him are considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a); *Myles*, 416 F.3d at 551-52.

      **Count 6 -**     Sergeant Doe was deliberately indifferent to Plaintiff's serious medical needs when he informed Plaintiff that Nurse/Medical Provider Doe would not respond to a non-emergency after he fell off his bunk on March 3, 2017.

      **Count 7 -**     Menard's policy of not having call buttons in all cells is unconstitutional.

(*See* Doc. 1, p. 5). The parties and the Court will continue to use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any claims not identified above shall be considered dismissed without prejudice from this action. For the reasons discussed below, Counts 4, 5, and 6 survive screening and shall receive further review; Counts 2, 3, and 7 will be dismissed.

All claims in the First Amended Complaint arise under the Eighth Amendment, which protects inmates from cruel and unusual punishment. U.S. CONST., amend. VIII. Eighth Amendment protections extend to conditions of confinement that pose a substantial risk of serious harm to an inmate's health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Eighth Amendment also safeguards inmates against the denial of adequate medical care. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). All Eighth Amendment claims have an objective and a subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *Wilson v. Seiter*, 501 U.S. 294, 302 (1991).

For conditions of confinement claims, the objective analysis focuses on whether the conditions exceeded the contemporary bounds of decency of a mature civilized society. *Id*. Prison conditions that deprive inmates of basic human needs (*e.g.*, food, medical care, sanitation, or physical safety) may violate constitutional norms. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). The subjective analysis

turns on the state of mind of the defendant, which is deliberate indifference in this context. *Farmer*, 511 U.S. at 842. Deliberate indifference is shown when a prison official acts or fails to act despite the official's knowledge of a substantial risk of serious harm. *Id*.

For claims of inadequate medical care, the objective component requires a plaintiff to establish that he suffered from a sufficiently serious medical condition, which is one that has been diagnosed by a physician as requiring treatment or would be obvious even to a layperson. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). To demonstrate deliberate indifference, a plaintiff must show that the prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Gutierrez*, 111 F.3d at 1369; *Farmer*, 511 U.S. at 837.

## Claims Subject to Further Review

*Counts 4 and 5*

The deliberate indifference claims in Count 4 against Nurse Tripp and in Count 5 against Nurse/Medical Provider Doe survive screening. Plaintiff alleges that both defendants failed to provide him with timely medical treatment for the injuries he sustained when falling from his top bunk on March 3, 2017. Nurse Tripp allegedly delayed treatment by three or more weeks, while Nurse/Medical Provider Doe refused to examine Plaintiff in his cell immediately after the fall. A significant delay in treatment may amount to deliberate indifference, particularly where it results in unnecessarily prolonged pain. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (reversing summary judgment for defendants where plaintiff did not receive treatment for broken nose for two days); *Gutierrez*, 111 F.3d at 1371-72 n. 6 (collecting cases). Given Plaintiff's allegations of pain and incapacitation in the days and weeks after his fall, the Court will allow

7

both claims to proceed. Count 4 shall receive further review against Nurse Tripp, and Count 5 shall proceed against Nurse/Medical Provider Doe.

*Count 6*

The deliberate indifference claim against Sergeant Doe in Count 6 is a closer call. When Plaintiff alerted this defendant to the fact that he fell and injured himself on March 3, 2017, Sergeant Doe responded by immediately summoning help from the prison's medical staff. Unfortunately, however, the staff refused to see Plaintiff for more than six hours because they did not consider his situation to constitute an emergency. When Nurse Tripp finally met with Plaintiff later the same day, she refused to address any of his injuries. Treatment was denied for almost three weeks.

Non-medical prison officials, like Sergeant Doe, are entitled to defer to the professional judgment of medical staff, as long as they do not ignore a plaintiff's serious medical needs. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citations omitted). Prison officials may be found deliberately indifferent to a prisoner's serious medical needs if "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Hayes v. Snyder,* 546 F.3d 516, 527 (7th Cir. 2008); *Reed v. McBride,* 178 F.3d 849, 854–56 (7th Cir. 1999) (warden was required to act when prison officials repeatedly denied an inmate life-sustaining medication and food). At this early stage, the Court must construe all allegations in the amended complaint in Plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). When doing so, the Court concludes that further review of this claim against Sergeant Doe is necessary, based on his knowledge of Plaintiff's incapacitation and pain and the medical staff's refusal to evaluate him immediately after the fall.

## Claims Subject to Dismissal

*Count 2*

The soy diet claim in Count 2 does not survive preliminary review and shall be dismissed. Plaintiff speculates that the excessive amount of soy in the prison diet is harmful to his health. His opinion, though shared by many inmates in the Illinois Department of Corrections, has been rejected by numerous courts when brought as a claim for unconstitutional conditions of confinement. *See, e.g., Harris v. Brown*, No. 07-cv-3225, 2014 WL 4948229 at *4 (C.D. Ill. Sept. 30, 2014) (concluding that "society today simply does not see soy protein as a risk to the general population, much less a serious risk"). The Court in *Harris* granted the defendants summary judgment, after appointing experts, reviewing their reports, and accepting them as true. *Id*. The Court concluded that the "safety of soy is [at most] a topic of current debate and study." *Harris*, 2014 WL 4948229 at *4. Other courts have reached the same conclusion. *See, e.g., Ruiz v. Bailey*, No. 17-cv-00107-SMY, 2017 WL 2645630 at *3–4 (S.D. Ill. June 20, 2017) (dismissing conditions of confinement claim based on soy diet at screening); *Riley-El v. Godinez*, No. 13 C 8656, 2013 WL 4572322 at *4 (N.D. Ill. July 27, 2015) ("[T]he alleged risks posed by consuming a soy-rich diet do not rise to the level of an Eighth Amendment violation."); *Munson v. Gaetz*, 957 F. Supp. 2d 951, 954 (S.D. Ill. 2013) (finding that defendants were entitled to qualified immunity because no court has found soy to be harmful); *Smith v. Rector*, No. 13-cv-00837, 2013 WL 5436371 (S.D. Ill. Sept. 30, 2013) (dismissing claim on vague allegations that prison diet contained too much soy); *Adams v. Talbor*, No. 12-2221, 2013 WL 5940630 (C.D. Ill. Nov. 6, 2013) (dismissing inmate's claim that soy diet caused his stomach problems). The alleged risks associated with a soy-rich diet have not been deemed sufficiently serious to support an Eighth Amendment claim for unconstitutional conditions of confinement.

In addition, the claim is subject to dismissal on grounds of qualified immunity, which shields government officials from liability where "their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When determining whether a defendant is entitled to qualified immunity, courts apply a two-part test: (1) whether the complained-of conduct violates the Constitution; and (2) whether the right was clearly established at the time the conduct occurred. *Id*. at 743 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court has emphasized the importance of reaching a decision regarding qualified immunity at the earliest possible stage in litigation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Seventh Circuit has upheld dismissal of soy diet claims under Federal Rule of Civil Procedure 12(b)(6), which shares its standard with § 1915A. *Doe v. Village of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015). Where the factual allegations in the amended complaint fail to demonstrate any violation of a clearly established constitutional right, dismissal based on qualified immunity is appropriate.

This Court cannot locate a case in which a court found that a soy diet posed a serious risk of harm to an inmate's health, that a soy diet is nutritionally inadequate, or that the diet is otherwise unconstitutional. On the contrary, the Seventh Circuit has declined to hold that a soy diet violates the Constitution. *Johnson v. Randle*, 619 F. App'x 552, 554 (7th Cir. 2015). Consistent with these cases, this Court finds no clearly established constitutional right to a soy-free or low-soy diet. Count 2 shall be dismissed without prejudice against all of the defendants for failure to state a claim upon which relief may be granted and because the defendants are entitled to qualified immunity. Plaintiff's related request for a preliminary injunction in the form of an order requiring Menard to provide him with a soy-free diet shall be denied without

prejudice, given the dismissal of this claim. (Doc. 12, pp. 28, 30-35).

*Count 3*

The deliberate indifference to medical needs claim in Count 3 also fails to pass muster under § 1915A. Plaintiff maintains that Nurse Tripp and P.A. Moldenhauer denied him adequate medical care for his complaints of severe stomach pain, constipation, gas, and rectal bleeding. Given his complaints of pain, the Court assumes without deciding that Plaintiff suffered from an objectively serious medical condition.

The allegations do not suggest that the defendants responded to the condition with deliberate indifference. Plaintiff faults both defendants for denying him adequate medical care. The allegations reveal, however, that the defendants simply denied Plaintiff the specific care he requested. Both refused to order him a soy-free diet. Nurse Tripp denied his request for a blood test for suspected hypothyroidism, and P.A. Moldenhauer did not prescribe him pain medication. Each of these requests for specific medical care is based on Plaintiff's speculation regarding the cause and cure of his symptoms. But Plaintiff does not allege that he is a trained medical professional. Also, a prisoner is not entitled to demand specific medical care; he is entitled to reasonable measures to meet a substantial risk of serious harm. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

According to the allegations, the defendants took reasonable steps to address Plaintiff's symptoms. In response to his complaints of constipation, gas, rectal bleeding, and pain, P.A. Moldenhauer gave Plaintiff a laxative and then took an x-ray of his stomach and/or intestines. The x-ray revealed constipation and gas, so P.A. Moldenhauer gave Plaintiff stool softeners. Nurse Tripp deferred to the medical judgment of P.A. Moldenhauer. These steps were taken without any alleged delay and were reasonable in light of the symptoms Plaintiff presented.

Plaintiff includes no other allegations suggesting that he put either of these defendants on notice that the stool softeners were ineffective or that he required further treatment for pain, constipation, rectal bleeding, etc. Absent any knowledge that the course of treatment was ineffective, the First Amended Complaint states no Eighth Amendment deliberate indifference claim against Nurse Tripp or P.A. Moldenhauer.

Absent an underlying claim against Nurse Tripp and P.A. Moldenhauer for denying Plaintiff adequate medical care for his symptoms, the First Amended Complaint states no separate Eighth Amendment claim against the counselor for denying or ignoring grievances related to these complaints. Certainly, it states no claim against Warden Lashbrook who did not even receive the grievances. Plaintiff's related Fourteenth Amendment due process claim against Counselor Rodely was dismissed with prejudice in *Croom v. Doe, et al.*, No. 17-cv-00632-NJR (S.D. Ill. dismissed Aug. 3, 2017) (Docs. 7-8). Count 6 shall be dismissed without prejudice against the defendants for failure to state a claim upon which relief may be granted.

*Count 7*

The fact that Plaintiff's cell had no emergency call button states no Eighth Amendment claim against the warden or anyone else. The lack of a call button did not cause any constitutional violation. When Plaintiff fell from his top bunk on March 3, 2017, his cellmate immediately called for help, and an officer responded fifteen minutes later. The officer immediately began the process of securing medical attention for Plaintiff. The fact that medical treatment was ultimately delayed or denied may have amounted to a constitutional violation, but not the lack of an emergency call button. Count 7 shall therefore be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Count 5 against Nurse/Medical Provider John Doe and Count 6 against Sergeant John Doe, the two unknown defendants who denied Plaintiff prompt medical treatment after he fell from the top bunk on March 3, 2017. These defendants must be identified with particularity, however, before service of the First Amended Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim against them but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Warden Lashbrook is already named as a defendant. Warden Lashbrook shall remain in this action, in her official capacity only, in order to respond to discovery aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of Nurse/Medical Provider John Doe and Sergeant John Doe are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the First Amended Complaint.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted and because the defendants are entitled to qualified immunity; **COUNT 3** is **DISMISSED** without prejudice against Defendants **TRIPP, MOLDENHAUER, RODELY,** and **LASHBROOK** and with prejudice against all other defendants for failure to state a claim upon which relief may be granted; and **COUNT 7** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 4** shall receive further review against Defendant **TRIPP**; **COUNT 5** shall receive further review against Defendant **NURSE/MEDICAL PROVIDER JOHN DOE**; and **COUNT 6** shall receive further review against Defendant **SERGEANT JOHN DOE**.

**IT IS ORDERED** that Defendant **JACQUELINE LASHBROOK (official capacity only)** shall remain named as a defendant in this action, in order to respond to discovery aimed at identifying the unknown defendants.

**IT IS ORDERED** that Defendants **MICHAEL MOLDENHAUER, COUNSELOR RODELY** and **JACQUELINE LASHBROOK (individual capacity only)** are **DISMISSED** without prejudice because the First Amended Complaint lacks sufficient allegations to state a claim against these defendants.

**IT IS ORDERED** that Plaintiff's request for preliminary injunctive relief (Doc. 12, pp. 28, 30-35) in the form of a soy-free diet is **DENIED** without prejudice.

**IT IS ORDERED** that as to **COUNTS 4, 5,** and **6**, Plaintiff has neither sought nor been granted leave to proceed *in forma pauperis* in this action, and the Court will not automatically appoint the United States Marshal to effect service of process upon Defendants **NURSE TRIPP, NURSE/MEDICAL PROVIDER JOHN DOE (once identified)**, **SERGEANT JOHN DOE (once identified)**, and **JACQUELINE LASHBROOK**. However, if Plaintiff desires to request the appointment of the United States Marshal to serve process on these defendants, Plaintiff shall file a Motion for Service of Process at Government Expense, within 35 days of the date of entry of this order (on or before **November 15, 2017**). The Clerk of Court is **DIRECTED** to mail to Plaintiff the Court's Pro Se Litigant Guide, containing forms and instructions for filing said motion.

If Plaintiff does not timely file a Motion for Service of Process at Government Expense, it shall be Plaintiff's responsibility to have Defendants **NURSE TRIPP, NURSE/MEDICAL PROVIDER JOHN DOE (once identified)**, **SERGEANT JOHN DOE (once identified)**, and **JACQUELINE LASHBROOK** served with a summons and copy of the First Amended Complaint (Doc. 12) pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that only a non-party may serve a summons. *See* FED. R. CIV. P. 4(c)(2).

If Plaintiff requests the appointment of the United States Marshal, the Clerk of Court shall prepare a summons and copies of the Complaint and this Memorandum and Order for each defendant, and shall forward the same to the United States Marshal for service. If Plaintiff does not file a Motion for Service of Process at Government Expense within 35 days as ordered, the Clerk shall then prepare a summons for each defendant, and shall forward the summonses and sufficient copies of the First Amended Complaint and this Memorandum and Order to Plaintiff so that he may have defendants served.

**IT IS FURTHER ORDERED** that, with respect to a defendant who no longer can be found at the work address provided by Plaintiff, if the United States Marshal is appointed to serve process pursuant to a motion by Plaintiff, the employer shall furnish the United States Marshal with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for effecting service of process. Any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file or disclosed by the Marshal.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a plan for discovery aimed at identifying Nurse/Medical Provider John Doe and Sergeant John Doe.

Further, this entire matter is **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  October 11, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**