# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CHRISTOPHER CROOM,**

        Plaintiff,

v.

**BRANDY TRIPP, BRENDA OETJEN, and KILE WESTERMAN,**

        Defendants.

Case No. 17-cv-631-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on summary judgment motions filed by Defendants Brenda Oetjen and Kile Westerman (Docs. 99, 100) as well as Defendant Brandy Tripp (Docs. 101, 102). Plaintiff Christopher Croom has filed responses to both motions (Docs. 109 and 104, respectively). Tripp has filed a reply brief (Doc. 106). Tripp also filed a motion to strike Croom's response (Doc. 105). Croom has not responded to that motion.

### BACKGROUND

Christopher Croom, an inmate of the Illinois Department of Corrections ("IDOC"), who is currently incarcerated at Menard Correctional Center ("Menard"), filed his First Amended Complaint alleging deliberate indifference in the treatment of injuries he sustained in a fall from his bed on March 3, 2017 (Doc. 12). The following claims remain:

    **Count 4:**    **Tripp was deliberately indifferent to Croom's injuries after he fell off his bunk on March 3, 2017, when she refused to examine him, ignored his call passes, and refused to prescribe him medication for his pain and stiffness.**

> **Count 5:** Oetjen was deliberately indifferent to Croom's serious medical needs when she refused to examine Croom and determine whether he was injured after he fell off his bunk.
>
> **Count 6:** Westerman was deliberately indifferent to Croom's serious medical needs when he informed Croom that Oetjen would not respond to a non-emergency after he fell off his bunk.

(Doc. 13, pp. 5-6).

On March 3, 2017, around 12:35 a.m., Croom fell from his top bunk while trying to jump into the bunk (Doc. 100-1, pp. 18-19, 54). As Croom was jumping back into his bunk after using the restroom, his knee slipped and he fell backwards, hitting his upper shoulder and head and landing on the ground (*Id*. at pp. 19, 44, 50). His elbow hit the bottom bunk during the fall and caused a "little" cut on his elbow (*Id*. at pp. 50-51). He had pain in his back, neck, and elbow (*Id*. at pp. 19, 52). The pain was initially severe, and he could hardly move his neck and back (*Id*. at p. 52). He felt that he could not move and waited on the floor to see if the nurse was going to come, but he eventually moved to the bottom bunk with the help of his cellmate (*Id*. at pp. 52-53). Croom estimated that he laid on the floor for an hour (*Id*. at p. 53). He acknowledged that he was conscious the entire time (*Id*.).

After Croom fell, his cellmate, Terris Warnsley, yelled for a correctional officer (Doc. 100-1, p. 9, 54-55). A correctional officer first approached Croom's cell approximately fifteen minutes later (*Id*. at p. 55). He then went and retrieved the sergeant (*Id*.). According to Menard's roster, Westerman was the sergeant in North 2 cellhouse from 11:00 p.m. to 7:00 a.m., but he does not remember responding to Croom's fall (Docs. 100-2, 100-7, p. 1). Warnsley talked with the officers while Croom laid on the cell floor (Doc. 100-1, p. 56). Warnsley told them that Croom fell and hurt his back (*Id*.). Croom

testified that he could speak during this time but would have to yell to be heard through the metal door, and he did not feel able to yell loud enough (*Id*. at p. 67). Westerman told Croom that he would call medical and left the cell (Doc. 100-1, pp. 19, 57). He returned ten minutes later and informed Croom that the nurse said it was not an emergency, and he could be seen in the morning during the regularly scheduled sick call (*Id*. at pp. 19, 57, 69). He does not know which nurse Westerman spoke with, although Oetjen was assigned to work between 11:00 p.m. March 2 and 7:00 a.m. March 3 (Doc. 100-3). He did not put in a sick call request that night, but the nurse told Westerman that she would put in a sick call request (Doc. 100-1, pp. 58, 69).

Later that same morning, on March 3, 2017, Croom saw Tripp for a regularly scheduled blood pressure check (Doc. 100-1, p. 19-20, 72). He was able to walk from his cell to the middle of the gallery for his blood pressure check (*Id*. at p. 20). He informed her of the fall, but she said that she did not know anything about the fall and was only there to check his blood pressure (*Id*.). She did visually inspect Croom, moving his shirt and looking at his back (*Id*. at p. 61). The medical records from that visit do not mention any complaints of pain, although Tripp testified that if Croom had informed her of his fall she would have noted it in the sick-call log (Doc. 102-3, pp. 2-3; 102-4, p. 3). He was already taking Motrin which was prescribed in February 2017 (Doc. 100-1, pp. 17, 21).

On March 5, 2017, Croom was scheduled for a sick call for an "injury" but the visit was recalled (Doc. 102-3, p. 3; 102-4, p. 5). On March 10, 2017, Croom met with a nurse for a scheduled blood pressure check, but there were no notations in the sick log that he complained of back pain (Doc. 102-3, p. 3; 102-4, p. 11). Croom could not recall if he spoke with the nurse about his injuries (Doc. 100-1, pp. 21-22). On March 11, 2017, he met with

nurse practitioner Moldenhauer and told him about the pain in his back and neck, but he was already taking ibuprofen and the medication was helping his pain (*Id.* at p. 22; Doc. 100-6, p. 4).

On March 26, 2017, Croom again met with Tripp. He testified that Tripp had an attitude and asked what was wrong with him because he kept submitting sick call slips (Doc. 100-1, pp. 22-23). He told her about the fall, but he does not remember how she responded (*Id.* at p. 23). Croom acknowledged that she referred him to the doctor (*Id.*; Doc. 100-6, p. 5).

On April 3, 2017, Croom saw nurse practitioner Moldenhauer again for headaches, stomach pain, and back pain (Doc. 100-1, pp. 24-25; 100-6, p. 6). Moldenhauer ordered an x-ray of Croom's spine which was unremarkable (Doc. 100-1, p. 25; 100-6, p. 48).

### LEGAL STANDARDS

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014), citing FED. R. CIV. P. 56(a). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enter., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, a district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving

party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014).

### B. Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("[D]eliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm— not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (*citing Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*,

511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted) (emphasis added).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

ANALYSIS

**A. Motion to Strike**

Tripp filed a motion to strike (Doc. 105) requesting that the Court strike an exhibit to Croom's response. As part of his response, Croom attached a document which he alleges constitutes his personal notes documenting when he submitted sick call requests and grievances (Doc. 104, p. 24). Although Croom alleges in his response that he mentioned the notes in his deposition, he does not state that he provided the document to any of the defendants. Tripp argues that she did not receive the document in discovery even though she specifically requested "[a]ll statements or memoranda of statements of any person having knowledge concerning the facts of this case" and "[a]ll accident, incident, or occurrence reports prepared by defendant or any other person…about the accident described in the Complaint" (Doc. 105-1, pp. 10-11). Tripp also argues that the document should have been produced pursuant to Federal Rule of Civil Procedure 26. Rule 26 requires that a party provide the other party "a copy…of all documents, electronically stored information, and tangible things that the disclosing party has in its

possession, custody, or control and may use to support its claims or defenses". FED. R. CIV. P. 26(a)(1)(A)(ii).

Croom failed to respond to Tripp's motion. He does not deny that he failed to produce the document in discovery, nor does he offer any explanation for the failure to disclose the document in discovery. Under Rule 37, if a party fails to disclose information "that party is not allowed to use that information…to supply evidence on a motion…unless the failure was substantially justified or is harmless." *See* FED. R. CIV. P. 37(c)(1). Croom also was warned in the scheduling order that a failure to disclose or supplement discovery may result in a sanction, including not being able to use the undisclosed information (Doc. 21, p. 4). Because Croom failed to disclose his personal notes in discovery, he cannot use the document to support his summary judgment response. Accordingly, the Court **GRANTS** the motion to strike (Doc. 105) and **STRIKES** Croom's Exhibit A (Doc. 104, p. 24).

### B. Kile Westerman

Westerman responded to Croom's cell after being notified by a correctional officer. When Croom's cellmate informed Westerman that Croom was in pain from a fall, he reported those injuries to the medical unit. Although Croom indicates in his response that he was unable to move or yell, was "in unimaginable pain," and "incapacitated" (Doc. 109, pp. 2, 7), he acknowledged in his deposition that he was conscious and able to talk, but allowed his cellmate to speak for him. There is no indication in the record that Westerman was aware that Croom was in the pain Croom describes in his response or was aware that he was unable to move. In fact, Croom testified that his cellmate only told Westerman that "[Croom] fell, his back hurts, he needs to see the nurse" (Doc. 100-1, p.

56). He also had a small cut on his elbow and was able to move to his cellmate's bottom bunk after some time on the floor. There is nothing in the record that would put Westerman on notice that Croom was in unimaginable pain, could not move, or needed immediate care.

There is also no evidence that he acted with deliberate indifference to Croom's condition, but instead he responded to the injuries by informing the nurse of his condition. The nurse responded that it was not an emergency and she would put a sick call request in for Croom to be seen. Although Croom argues that Westerman could have overruled her decision and ordered her to assess Croom's injuries, as a non-medical defendant, he was allowed to rely on the expertise of medical personnel. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). The nurse informed Westerman that it was not an emergency and that Croom would be seen on sick call. He was allowed to rely on the nurse's statements that he would be seen on sick call. Accordingly, Westerman is entitled to summary judgment.

### C. Brenda Oetjen

The Court also finds that Oetjen is entitled to summary judgment. Although Oetjen argues that there is no evidence in the record to indicate that she was personally involved in Croom's care, the healthcare unit work schedule shows that Oetjen was the nurse on duty for Croom's cellhouse (Doc. 100-3, p. 1). Thus, there is some evidence in the record to suggest that Oetjen responded to the call from Westerman and informed him that she would not visit Croom immediately but would put him on the sick call list. But the Court finds that any delay caused by Oetjen did not amount to deliberate indifference. There is no evidence in the records from which a jury could find that the

delay caused harm. A delay can amount to deliberate indifference if it exacerbates the injury or unnecessarily prolongs a plaintiff's pain. *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). "In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm. That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) (internal citations omitted). Croom fails to offer any such evidence. The medical records show that he was seen on a number of occasions after his fall. On March 11, 207, he told Moldenhauer that the pain medications he was already taking were helping his back pain, and an x-ray in April 2017 showed that his spine was normal. Nothing in the records suggests that any delay he experienced was detrimental to his condition. Accordingly, Oetjen is also granted summary judgment.

### D. Brandy Tripp

Tripp is also entitled to summary judgment. Croom argues that there are disputes of fact that prevent summary judgment because he submitted several sick call requests which Tripp ignored. Although there may be disputes of fact as to whether Tripp received and ignored those sick call requests, the Court finds that those disputes of fact are not material. Even if Tripp received and ignored Croom's sick call requests, Croom fails to offer any evidence that the delay was detrimental to his condition. As previously stated, the evidence in the record shows that Croom was seen on multiple occasions after his fall. On March 3, Tripp looked at Croom's back during his blood-pressure check. On March 11, he met with Moldenhauer, but he informed Moldenhauer that he was already

taking prescribed pain medications which was helping his pain (Doc. 100-1, pp. 22-23). On March 26, 2017, he saw Tripp who referred him to the doctor (*Id*.). An x-ray was ordered for his spine, and the x-ray showed that his spine was normal. There is nothing in the record from which a jury could find that any delay by Tripp was detrimental to his condition. Further, to the extent he alleges that Tripp did not provide him with pain medication, he acknowledged in his deposition that he was already prescribed pain medication, which he was taking at the time of his fall, and he informed Moldenhauer that the prescribed medication was helping the pain. Accordingly, summary judgment is granted as to Tripp.

## CONCLUSION

For the reasons stated above, the summary judgment motions by Oetjen and Westerman (Docs. 99, 100) and Tripp (Docs. 101, 102) are **GRANTED**. The Clerk is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:** March 23, 2020

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　**NANCY J. ROSENSTENGEL**
　　　　　　　　　　　　　　　　　　　　　　**Chief U.S. District Judge**